IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

LIA K. SMITH-HUTCHINSON, *et al.*,

    Plaintiffs,

vs.

ITS FINANCIAL LLC, *et al.*,

    Defendants.

Case No. 3:13-cv-192

Magistrate Judge Michael J. Newman
(Consent Case) [1]

---

**DECISION AND ENTRY: (1) GRANTING PLAINTIFFS' MOTIONS FOR VOLUNTARY DISMISSAL (DOCS. 71, 73); (2) GRANTING DEFENDANTS' MOTION TO DISMISS (DOC. 29); (3) DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DOC. 54) WITHOUT PREJUDICE AS MOOT; (4) DENYING DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT (DOC. 30) AS MOOT; (5) STAYING DISMISSAL OF THE COMPLAINT FOR THIRTY DAYS; AND (6) *SUA SPONTE* GRANTING PLAINTIFFS LEAVE TO FILE A SECOND AMENDED PLEADING WITHIN THIRTY DAYS**

---

    This civil consent case is before the Court on a number of motions:

(1)     Defendants ITS Financial, LLC; TCA Financial, LLC; Tax Tree, LLC; Fesum Ogbazion; Pete Smborsky, Kyle Wade; and Shelley Franz[2] filed a motion to dismiss Plaintiffs' amended complaint. Doc. 29. Plaintiffs filed a memorandum in opposition to Defendants' motion to dismiss. Doc. 42. Defendants filed a reply memorandum. Doc. 45;

(2)     Defendants Mowery, Roda, Woryk, Wise, San Giacomo and Franz filed an amended motion for summary judgment. Doc. 30. Plaintiffs filed a memorandum in opposition to the amended motion for summary judgment. Doc. 46. Defendants filed a reply memorandum. Doc. 50; and

---

[1] The parties unanimously consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c). As a result, United States District Judge Walter H. Rice referred this case to the undersigned for disposition. Doc 28. Accordingly, the undersigned is empowered to dispose of all matters herein, whether non-dispositive or dispositive. *See* 28 U.S.C. § 636(c).

[2] Shelley Franz was originally named as a Defendant, but she has since been dismissed from the case. Doc. 52.

 (3) Plaintiffs filed a motion for class certification. Doc. 54. Defendants filed memoranda in opposition. Docs. 60, 61. Plaintiffs filed a reply memorandum in support of their motion. Doc. 65.

The Court has carefully considered each of the forgoing documents, and these motions are now ripe for decision by the undersigned.

In addition to these foregoing motions, Plaintiffs move to voluntarily dismiss Defendants Roda, Mowery, Woryk, Wise, San Giacomo and Harwood with prejudice. Docs. 71, 73. Defendants consent to Plaintiffs' request to voluntarily dismiss the action against them and, therefore, for good cause shown, and absent opposition by these Defendants, Plaintiffs' motions, doc. 71, 73 are **GRANTED** pursuant to Fed. R. Civ. P. 21.

## I.

Plaintiffs Lia K. Smith-Hutchinson, Phyllis Laney, and Chelsea Cochran filed this case against thirteen Defendants[3] for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. Doc. 26. Plaintiffs also seek to certify a class of:

> All persons who had an individual or joint federal income tax return(s) prepared at any Instant Tax Service location owned and/or operated and/or franchised by any of the Defendants in the United States of America and who had such tax return(s) filed by any of the Defendants or their representatives/franchisees with the Internal Revenue Service during the five (5) year period immediately prior to January 1, 2013.

Doc. 26 at PageID 555; *see also* doc. 54 at PageID 1134.

In alleging a scheme to defraud, Plaintiffs reference a 2012 civil case filed by the United States seeking a permanent injunction against Defendants Ogbazion, ITS, Tax Tree, and TCA

---

[3] The thirteen Defendants are ITS Financial, LLC ("ITS"); TCA Financial, LLC ("TCA Financial"); TCA Capital, LLC ("TCA Capital"); Tax Tree, LLC ("Tax Tree"); Fesum Ogbazion; James B. Mowery; Pete Samborsky; Kyle Wade; Joseph Roda; Brook Wise; Gregory J. Woryk; Bill San Giacomo; and Kevin L. Harwood. Doc. 26 at PageID 509-12.

Financial for violations of the Internal Revenue Code ("I.R.C.") and other federal and state laws. *United States v. ITS Fin.*, LLC, No. 3:12-cv-95 (S.D. Ohio).[4] The alleged fraudulent scheme, as summarized by Plaintiffs in their response to Defendants' motion to dismiss, involved filing fraudulent tax returns; electronically reporting fictitious income; fraudulently maximizing the Earned Income Tax Credit ("EITC"); filing federal income tax returns without the customer's consent; omitting sources of reportable income; charging excessive fees; and engaging in fraudulent refund anticipation loans, instant cash loans, instant cash advances, electronic refund checks and personal income tax refund discounting scams. Doc. 42 at PageID 1025-26. Defendants allegedly furthered this fraudulent scheme through the use of interstate wires and/or mail by transmitting "false and fraudulent claims . . . from various Instant Tax Service offices throughout the United States to the respective IRS offices[.]" Doc. 26 at PageID 560.

Each of the three named Plaintiffs utilized an Instant Tax Service franchise. Doc. 26 at PageID 550-54. Smith-Hutchinson, a North Carolina resident, used an Instant Tax Service franchise in Charlotte, North Carolina to prepare her 2011 state and federal tax returns. *Id*. at PageID 509, 550. Smith-Hutchinson went to Instant Tax Service with her paycheck stub, was approved for a $100 instant cash loan, was told that the fees for the loan and tax preparation would not exceed $300, and that she would receive a tax refund within forty-eight hours. *Id*. Smith-Hutchinson ultimately received her tax refund via check in an amount "significantly less" than the $5,042 refund she was told she would receive. *Id*. Smith-Hutchinson was told that Instant Tax Service deducted certain amounts from her refund, including $400 for tax

---

[4] On November 6, 2013, Judge Black entered a permanent injunction -- pursuant to I.R.C. §§ 7402(a) and 7408 -- detailing repeated violations of federal tax and other laws by those Defendants and prohibiting them from, *inter alia*, having any involvement in the preparation of tax returns. *See United States v. ITS Fin., LLC*, No. 3:12-cv-95, 2013 WL 5947222 (S.D. Ohio Nov. 6, 2013).

preparation, $100 for repayment of the instant cash loan, and $300 to receive her refund by check. *Id*. at PageID 552.

Phyllis Laney, a Missouri citizen, used an Instant Tax Service location in St. Louis to prepare and electronically file her 2010 federal and Missouri tax returns. *Id*. at PageID 552-53. Instant Tax Service allegedly told Laney to expect a $4,882 federal tax refund and a $220 state tax refund. *Id*. Instant Tax Service also allegedly told Laney that she would be charged $618 in fees that would be deducted from her refund. *Id*. Instant Tax Service ultimately charged Laney $49 in bank fees, a $150 preparation fee, $59 for e-file fees, $153 for a bank documents fee, a $90 service bureau fee, and a $17 transmission fee, *i.e.*, at total of $518. *Id*. Laney actually received a $1,571.99 federal refund and never received a state refund. *Id*.

Chelsea Cochran, also a Missouri citizen, went to an Instant Tax Service office in St. Louis in January 2011 to have her 2010 federal and Missouri tax returns prepared. Doc. 26 at PageID 554. Instant Tax Service informed Cochran she would receive a $1,276 federal refund and a $15 state refund, minus a fee to be determined after processing of her returns. *Id*. Cochran subsequently received a refund for approximately $600 after Instant Tax Service charged her $711 in unknown fees. *Id*.

Together the three named Plaintiffs make no allegations that their tax returns were prepared or filed without their consent, or that Instant Tax Service filed incorrect or inaccurate returns on their behalf. Doc. 26 at PageID 550-54. Instead, the named Plaintiffs allege that the fees charged and deducted were greater than those agreed to, estimated or anticipated. *Id*. In

4

other words, the allegations specific to the three named Plaintiffs do not implicate much of the alleged fraudulent conduct described in their lengthy amended complaint.[5]

## II.

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Accordingly, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct

---

[5] In their amended complaint, Plaintiffs also allege that Defendants -- contrary to representations made in advertisements -- employ tax preparers who are not qualified and lack the experience to properly complete and file returns. *See* doc. 26 at PageID 516, 526. Plaintiffs here, however, make no allegation that their returns were either prepared or filed by inexperienced or unqualified individuals.

alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

### III.

Plaintiffs' amended complaint asserts RICO claims "against Defendants for conspiring . . . to violate and for violating 18 U.S.C. § 1962(c)." Doc. 26 at PageID 559-61. Among other activities, RICO prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *In re ClassicStart Mar Lease Litig.*, 727 F.3d 473, 483 (6th Cir. 2013) (citing 18 U.S.C. § 1962(c)).

In addition to criminal penalties, RICO provides a civil remedy to individuals "injured in his [or her] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); *see Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 564-65 (6th Cir. 2013) (*en banc*). Stating a civil RICO claim requires pleading four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id*. (citations omitted). The term "racketeering activity" includes predicate acts of mail and wire fraud, which are criminal offenses indictable under 18 U.S.C. §§ 1391 and 1961(1), respectively. *Id*.

### A.

In seeking to dismiss the amended complaint, Defendants argue that Plaintiffs' amended pleading fails to allege fraud with sufficient particularity. "In alleging fraud or mistake, a party

6

must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Because Plaintiffs' RICO claims are premised on acts of wire[6] and/or mail fraud, Fed. R. Civ. P. 9(b) applies in this case. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). Fraud claims require allegations that: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (citation omitted).

Here, Plaintiffs allege a fraudulent scheme that Defendants furthered, by using interstate wires and/or mail, to transmit "false and fraudulent claims . . . from various Instant Tax Service offices throughout the United States *to the respective IRS offices*[.]" Doc. 26 at PageID 560 (emphasis added). However, no allegations in the 54 page, 195 paragraph amended complaint detail what "false and fraudulent claims" were transmitted "from . . . [an] Instant Tax Service office[] . . . to the respective IRS office[]" on behalf of any of the named Plaintiffs. *Id*. Accordingly, Plaintiffs fail to allege with sufficient particularity predicate acts of wire and/or mail fraud. *See Penn, LLC v. Propser Business Dev. Corp.*, No. 2:10-cv-993, 2011 WL 2118072, at *11 (S.D. Ohio May 27, 2011) (dismissing RICO claims based on predicate acts of wire/mail fraud where plaintiffs failed to allege "any facts identifying the persons involved, or the time, place, or content of the allegedly fraudulent mail and/or wire communications"). As a result, the amended complaint must be dismissed.

---

[6] A wire fraud offense consists of the following three elements: "(1) that the defendant devised or willfully participated in a scheme to defraud; (2) that he used or caused to be used an interstate wire communication in furtherance of the scheme; and (3) that he intended to deprive a victim of money or property." *United States v. Cunningham*, 679 F.3d 355, 370 (6th Cir. 2012) (citations and internal quotations omitted); *see also* 18 U.S.C. § 1343. "[M]ail-fraud and wire-fraud statutes [have] essentially the same elements, except for the use of the mails versus the wires." *United States v. Kennedy*, 714 F.3d 951, 958 (6th Cir. 2013) (citations omitted).

**B.**

Assuming, *arguendo*, that Plaintiffs adequately plead fraud with sufficient particularity, Defendants also argue that Plaintiffs fail to allege injury "by reason of" such fraud in the absence of allegations that "their own tax returns were false and[/or] fraudulent[.]" Doc. 29 at PageID 912. In other words, Defendants contend that the amended complaint fails to demonstrate Plaintiffs' standing and fails to sufficiently allege causation.

"RICO's civil-suit provision imposes two distinct but overlapping limitations on claimants -- standing and proximate cause." *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612 (6th Cir. 2004). When, as here, the alleged injury is premised on predicate acts of fraud, a plaintiff must demonstrate that those predicate acts were both a "but for" and a proximate cause of his or her injuries. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also Heinrich*, 668 F.3d at 405 (stating that, "[t]o allege a valid RICO claim . . . a plaintiff must show not only that the predicate act was a 'but for' cause of plaintiff's injuries, but also that it was a proximate cause"). "[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts . . . generally . . . stand[s] at too remote a distance to recover." *Trollinger*, 370 F.3d at 613 (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992)).

While transmitting false tax returns can constitute wire fraud, *see Hofstetter v. Fletcher*, 905 F.2d 897, 902 (6th Cir. 1988), the allegations here set forth no plausible connection between the alleged injuries of these named Plaintiffs -- *i.e.*, being charged an excessive fee -- and the alleged fraudulent conduct -- *i.e*., the filing of a fraudulent tax return. For instance, the allegations here are similar to the allegations made in the case of *Martin v. JTH Tax, Inc.*, No. 9:10-cv-3016, 2013 WL 1282224 (D.S.C. Mar. 27, 2013). In *Martin*, the District Court found

adequate causation because "audits experienced by the plaintiffs occurred as a result of the alleged illegal tax preparation scheme." *Id*. In other words, in *Martin*, plaintiffs incurred audit costs as a result of the fact that their returns were subject to closer scrutiny based on the history of defendants' fraudulent activity. *Id*.

Here, there are no such allegations that Plaintiffs suffered injury by reason of Defendants' purported history of filing fraudulent returns. Instead, the named Plaintiffs complain only that they were charged a fee in excess of that agreed, estimated or anticipated. Doc. 26 at PageID 550-54. Plaintiffs' allegations, as presented, amount to nothing more than claims alleging the charging of a fee "for tax related services at a rate that was not agreed to by the parties." *C & L Ward Bros., Co. v. Outsource Solutions, Inc.*, No. 11-cv-14773, 2012 WL 3157005, at *5 (E.D. Mich. Aug. 3, 2012). Such allegations, without more, "fail[] to plausibly allege the predicate acts of mail and wire fraud[.]" *Id*.

### IV.

Courts have discretion in determining whether to dismiss a complaint or to allow a plaintiff the opportunity to amend. *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003). In cases "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Id*. (citations omitted). Dismissal without allowing further amendments "may be appropriate . . . where there is 'repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Id*. (citations omitted).

The Court concludes that a more carefully drafted complaint may properly state a RICO claim on behalf of these named Plaintiffs. Accordingly, the Court **GRANTS** Plaintiffs leave to

file a second amended complaint within **THIRTY DAYS** from the entry of this Order on the Court's docket. If no second amended complaint is filed within thirty days, the Court will deem this case terminated with prejudice.

V.

Based on the foregoing, the undersigned concludes that Plaintiffs' amended complaint fails to state a claim upon which relief can be granted and also fails to adequately demonstrate that these Plaintiffs possess standing to assert claims based on Defendants' alleged fraudulent conduct. Accordingly, the Court:

(1) **GRANTS** Plaintiffs' motions to voluntarily dismiss Defendants Joseph Roda, James Mowery, Gregory Woryk, Brook Wise, Bill Sangiacomo and Kevin Harwood (docs. 71, 73) and **DISMISSES** these Defendants **WITH PREJUDICE** pursuant to Fed. R. Civ. P 21;

(2) **GRANTS** Defendants' motion to dismiss (doc. 29);

(3) **STAYS** dismissal for 30 days;

(3) **GRANTS** Plaintiffs leave to file a second amended complaint complying with the requirements of Fed. R. Civ. P. 8[7] and 12; and

---

[7] Rule 8 of the Federal Rules of Civil Procedure requires that a pleading set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." This requirement means that "[a] complaint must be concise, and it must be clear." *Gurman v. Metro Hous. and Redevelopment Auth.*, 842 F.Supp.2d 1151, 1152 (D. Minn. 2011). The Rule prohibits a pleading party from "cough[ing] up an unsightly hairball of factual and legal allegations, stepp[ing] to the side, and invit[ing] the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two." *Id*. at 1153. The amended complaint now before the Court for review -- which, with attachments, is 389 pages with 195 paragraphs -- includes numerous allegations regarding EITS; false tax schedules; education credits; filing of returns without taxpayer consent; the lack of tax preparation experience of Defendants' tax preparers; deceptive advertising; deceptive loan products; electronic filing identification number ("EIFN") trafficking; consumer complaints; and non-complaint tax returns. Doc. 26 at PageID 515-50. As noted in more detail *supra*, the amended complaint offers nothing tying many of these allegations to the circumstances involving these named Plaintiffs. The amended complaint, therefore, is not a "short and plain statement of the claim showing that the pleader is entitled to relief," and, accordingly, is dismissed without prejudice on this alternative basis as well. *See Gurman*, 842 F.Supp.2d at 1151-52.

 (4)  **DENIES, WITHOUT PREJUDICE TO REFILE**, Plaintiffs' motion for class certification (doc. 54) as moot.[8]

**IT IS SO ORDERED.**

Date: September 23, 2014         *s/ Michael J. Newman*
                       Michael J. Newman
                       United States Magistrate Judge

---

[8] The Court also concludes that -- assuming, *arguendo*, Plaintiffs' amended complaint was not subject to dismissal -- the purported class Plaintiffs seek to certify is substantially overbroad. "A proposed class may be deemed overly broad if it would include members who have not suffered harm at the hand of the Defendant and are not at risk to suffer such harm. A properly defined class includes only members who would have standing to bring suit in their own right." *Pilgrim v. Universal Health Card, LLC*, No. 5:09CV879, 2010 WL 1254849, at *2 (N.D. Ohio Mar. 25, 2010), aff'd, 660 F.3d 943 (6th Cir. 2011). Plaintiffs acknowledge that not *all* franchisees took part in the purported fraudulent activity and, therefore, many of the proposed class members likely had proper returns filed on their behalf and suffered no damages whatsoever. Doc. 26 at PageID 519 (alleging that "[m]any," but not all "of the franchisees engage in systemic and pervasive tax fraud"); *see also id*. at PageID 532 (alleging that "[m]any," but not all "Instant Tax Service offices file tax returns based on paycheck stubs and without customer authorization"); *id*. at PageID 538 (alleging that "employees at many," but not all "of Instant Tax Service's most profitable franchises throughout the country have engaged in widespread illegal activity"). Further, the injuries to the named Plaintiffs are not similar to the injuries of the proposed putative class. The allegations of the putative class range from the filing of fraudulent tax returns on behalf of proposed class members to the filing of returns without consent. *Id*. at PageID 538. The named Plaintiffs, however, do not allege that any such conduct occurred in the preparation of their taxes. *Id.* at 550-54. Accordingly, the alleged injuries of the named Plaintiffs are not typical of those allegedly suffered by the proposed class members. *See In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (stating that "[t]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct").